UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RAYMOND D. ELLIOTT,<br><br>        Plaintiff,<br><br>  vs.<br><br>OCWEN LOAN SERVICING, L.L.C.,<br><br>        Defendant. | CIV. 15-5038-JLV<br><br>AMENDED ORDER |

      Plaintiff Raymond D. Elliott filed this action against defendant Ocwen Loan Servicing, L.L.C. ("Ocwen"). (Docket 20). Plaintiff originally appeared *pro se* and named multiple defendants. (Docket 1). Now he is represented by counsel and maintains this suit against Ocwen only. (Dockets 10 & 20). He seeks relief pursuant to the Truth in Lending Act ("TILA" or "Act"), 15 U.S.C. §§ 1601 *et seq.* (Docket 20). Defendant filed a motion for summary judgment. (Docket 37).

## STANDARD OF REVIEW

      Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing

substantive law will properly preclude summary judgment. Id. at p. 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at p. 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at pp. 251-52.

## FACTS

The following recitation consists of the material facts developed from plaintiff's amended complaint (Docket 20), defendant's answer (Docket 22), defendant's statement of undisputed material facts (Docket 39) and plaintiff's response. (Docket 48). Where a statement of fact is admitted by the opposing party, the court will only reference the initiating document. These facts are "viewed in the light most favorable to the [party] opposing the motion." Matsushita Elec. Indus. Co., 475 U.S. at 587.

On or about December 7, 2006, plaintiff refinanced the mortgage on his property located at 2655 South Valley Drive, Rapid City, South Dakota. (Docket 39 ¶ 1). To do this he borrowed $340,800 from Homecomings Financial LLC ("Homecomings"). Id. Plaintiff executed and delivered to Homecomings a promissory note evidencing the $340,800 debt owed to Homecomings. Id. ¶ 2.

Plaintiff executed a mortgage on his property to secure the debt evidenced in the note. Id. ¶ 4. The mortgage provides the note may be sold without notice to plaintiff. Id. ¶ 6; (Docket 41-2 at p. 14). It also states the loan servicer may change "unrelated to a sale of the Note[,]" and if that happened plaintiff would receive written notice. (Dockets 39 ¶ 7 & 41-2 at p. 14). In closing his loan, plaintiff signed two documents related to TILA titled Notice of Right of Rescission and Truth in Lending Disclosure Statement. (Dockets 39 ¶¶ 8-10 & 41-3).

Following the closing of the loan, Homecomings sold the note to Residential Funding Company LLC ("Residential Funding"). (Dockets 39 ¶ 11 &

41-1). Residential Funding then sold the note to GMAC Mortgage ("GMAC"), which proceeded to sell it to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). (Dockets 39 ¶¶ 12-13, 40-7 & 40-12). Freddie Mac has retained ownership of the note since this last transaction. (Dockets 39 ¶ 14 & 40-1).

On or about July 21, 2010, GMAC became the servicer for plaintiff's loan. (Dockets 39 ¶ 15 & 41-4). GMAC then assigned that function to defendant. (Dockets 39 ¶ 17 & 40-10). Defendant was plaintiff's loan servicer from February 16, 2013, to October 15, 2015. (Dockets 39 ¶¶ 25-26, 41-7 & 41-8). Residential Credit Solutions, Inc. ("Residential Credit") took over as plaintiff's loan servicer after defendant. (Dockets 39 ¶ 18 & 41-8).

In 2010, when GMAC was servicing the loan, it initiated a foreclosure action on plaintiff's property in state court. (Dockets 39 ¶ 29 & 40-2). During the foreclosure litigation, GMAC filed for bankruptcy, defendant purchased GMAC's servicing rights and defendant was substituted for GMAC in the foreclosure case. (Dockets 39 ¶ 32 & 40-5 at p. 5). The state trial court determined GMAC was the loan's holder and servicer and Freddie Mac was the note's owner. (Docket 40-5 at p. 5). Plaintiff appealed and the South Dakota Supreme Court affirmed the trial court's ruling. (Docket 39 ¶ 35). A Sheriff's Sale for plaintiff's property occurred on October 31, 2014, and defendant was the highest bidder. (Docket 39 ¶ 36).

On May 13, 2015, plaintiff filed his original complaint in this case. (Docket 1). Plaintiff later filed an amended complaint consisting of one count based on TILA. (Docket 20). Plaintiff asserts TILA provides him with a right of rescission which he timely exercised. Id. at pp. 3-4 (citing 15 U.S.C. § 1635(b)); (Docket 47-1). Plaintiff sent a notice of rescission to Homecomings on October 30, 2009. (Docket 47-1). According to plaintiff, his rescission frees him from the obligation to pay the $340,800 note. (Docket 20 at pp. 4-5). Defendant generally denies plaintiff's allegations and moves for summary judgment. (Dockets 22 & 37).

## ANALYSIS

TILA is meant "to assure the meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601(a). "Courts broadly construe the TILA in favor of consumers." Keiran v. Home Capital, Inc., 858 F.3d 1127, 1130 (8th Cir. 2017).

TILA "grants borrowers the right to rescind a loan 'until midnight of the third business day following the consummation of the transaction or the delivery of the [disclosures required by the Act], whichever is later, by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so.'" Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790, 792 (2015) (quoting 15 U.S.C. § 1635(a)). This right applies to a loan

"secured by a debtor's primary residence . . . ." Rand Corp. v. Yer Song Moua, 559 F.3d 842, 846 (8th Cir. 2009).

"This regime grants borrowers an unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure requirements. But this conditional right to rescind does not last forever." Jesinoski, 135 S. Ct. at 792. "Even if a lender never makes the required disclosures, the 'right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.'" Id. (quoting 15 U.S.C. § 1635(f)). "[S]o long as the borrower notifies within three years after the transaction is consummated, his rescission is timely." Id.

Defendant argues that even if plaintiff followed this procedure for rescission, defendant is entitled to summary judgment because it is not the proper party to sue under TILA. (Docket 38 at pp. 8-12). Defendant explains it was the servicer of plaintiff's loan, not the owner. Id. at pp. 8-9. According to defendant, "[l]oan servicers who never possessed an ownership interest in the Note have no liability for damages or claims for rescission under TILA." Id. at p. 8.

In plaintiff's view, defendant's "claim to being neither the current or former owner of a beneficial interest in Elliott's Note is plainly inconsistent with South Dakota law." (Docket 46 at p. 6). Plaintiff contends South Dakota law requires finding "the transfer of a note secured by a mortgage carries the mortgage with

6

it." Id. (internal quotation marks omitted).  Plaintiff argues "[a]ny doubt about Ocwen's status as an owner of the note should be construed in Elliott's favor." Id. at p. 7.

The section of the TILA granting plaintiff the right to rescind states the borrower must notify "the creditor."  15 U.S.C. § 1635(a).  It requires the "creditor" to meet TILA's disclosure standards.  Id.  "The term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."  15 U.S.C. § 1602(g).

TILA defines the term "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."  12 U.S.C. § 2605(i)(2) (providing a definition of "servicer" on which TILA relies).

The Consumer Financial Protection Bureau explains the difference between a mortgage lender and servicer this way:

> Your mortgage lender is the financial institution that loaned you the money.  Your mortgage servicer is the company that sends you your mortgage statements.  Your servicer also handles the day-to-day tasks for managing your loan.

7

Your loan servicer typically processes your loan payments, responds to borrower inquiries, keeps track of principal and interest paid, manages your escrow account (if you have one) and may initiate foreclosure under certain circumstances. Your servicer may or may not be the same company that gave you your loan.

<u>What's the difference between a mortgage lender and a servicer?</u>, Mortgages - Consumer Financial Protection Bureau, available at https://www.consumerfinance.gov/ask-cfpb/whats-the-difference-between-a-mortgage-lender-and-a-servicer-en-198/.

Given the distinctions between servicers and creditors, TILA expresses in clear language when a servicer may be liable under the statute. Unless a servicer is or was the creditor of the loan, TILA exempts the servicer from liability. 15 U.S.C. § 1641(f). The statute provides:

(f) Treatment of servicer

(1) In general

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

(2) Servicer not treated as owner on basis of assignment for administrative convenience

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone

> number of the owner of the obligation or the master servicer of the obligation.

Id.

"As the House Report for the TILA amendments that added subsection (f) explained, 'A number of recent consumer lawsuits against mortgage loan servicers have claimed the servicer is an assignee of the creditor who made the loan and is therefore liable. . . . This provision clarifies that the loan servicer (the entity collecting payments from the consumer and otherwise administering the loan) is not an 'assignee' under the TILA unless the servicer is the owner of the loan obligation.'" Gale v. First Franklin Loan Servs., 701 F.3d 1240, 1245 (9th Cir. 2012) (quoting H.R. Rep. No. 104-193, at 99 (1995)).

The United States Court of Appeals for the Sixth Circuit affirmed dismissal of a TILA claim against a non-owner servicer because "TILA expressly exempts servicers from liability unless the servicer was also a creditor or a creditor's assignee." Marais v. Chase Home Fin. LLC, 736 F.3d 711, 718-19 (6th Cir. 2013). Many United States District Courts echo this determination. See, e.g., Che v. Aurora Loan Servs., LLC, 847 F. Supp. 2d 1205, 1209 (C.D. Cal. 2012) ("For a loan servicer to be subject to liability for a violation of the TILA, the loan servicer must also own the subject loan."); see also Valrie v. Nationstar Mortgage, LLC, 900 F. Supp. 2d 1294, 1297-98 (S.D. Ala. 2012) (same); Pitts v. Wells Fargo Bank, N.A., No. 14-cv-02211, 2015 WL 5728879, at *4 (D.D.C. Sept. 29, 2015) (same); Bravo v. MERSCORP, Inc., No.

9

1:12-CV-884, 2013 WL 4851697, at *2 (E.D.N.Y. Sept. 10, 2013) (same); Danier v. Fed. Nat. Mortgage Ass'n, No. 12-62354-CIV, 2013 WL 462385, at *5 (S.D. Fla. Feb. 7, 2013) (same); Horton v. Country Mortgage Servs., Inc., No. 07 C 6530, 2010 WL 55902, at *3 (N.D. Ill. Jan. 4, 2010) (same).

Plaintiff does not contest that defendant was a servicer of his loan. (Docket 46 at pp. 6-7). Plaintiff's argument is defendant was a servicer who also owned the $340,800 obligation. Id. The core issue is whether defendant ever owned plaintiff's loan.

Defendant was plaintiff's loan servicer from February 16, 2013, to October 15, 2015. (Dockets 39 ¶¶ 25-26, 41-7 & 41-8). When defendant became plaintiff's loan servicer, it sent him a letter stating "[t]he servicing of your mortgage loan, that is the right to collect payments from you, is transferring from your current servicer, GMAC . . . to your new servicer, Ocwen . . . ." (Docket 41-7 at p. 1). And when defendant stopped servicing plaintiff's mortgage, it delivered a letter to him indicating "[t]he servicing of the above referenced mortgage loan is being transferred . . . [and Residential Credit] will be collecting the mortgage loan payments." (Docket 41-8 at p. 1). During these transitions the mortgage was assigned to each different servicer. (Dockets 40-10 & 41-6).

Just as the servicer of plaintiff's mortgage changed over time, the $340,800 note changed owners. Plaintiff's note was owned by Homecomings, then sold to Residential Funding, who sold it to GMAC and

finally Freddie Mac purchased the note from GMAC. (Dockets 39 ¶¶ 11-14, 40-1, 40-7, 40-12 & 41-1). Based on the record, the ownership of the note followed a path separate from the servicing of the mortgage. The record shows defendant only serviced plaintiff's loan. TILA contemplates this possibility by exempting non-owner servicers from liability. 15 U.S.C. § 1641(f). Viewing the facts in a light most favorable to plaintiff, the court finds plaintiff fails to demonstrate defendant ever owned the note.

Plaintiff claims South Dakota law prohibits the owner of the note and the servicer from being separate entities. (Docket 46 at pp. 6-7). Even if the court assumes plaintiff is correct on South Dakota law, his argument is unavailing. If plaintiff is correct, there is tension between TILA and South Dakota law. TILA permits a servicer to be distinct from a creditor. 15 U.S.C. § 1641(f). The law of South Dakota, as plaintiff states it, would not permit that distinction. (Docket 46 at pp. 6-7). "[S]tate law should not be applied where to do so would require a course of action in contravention of a specific direction in a federal statute." Hickman v. Cliff Peck Chevrolet, Inc., 566 F.2d 44, 47 (8th Cir. 1977). In Hickman, the United States Court of Appeals for the Eighth Circuit refused to apply a state law that contravened TILA. Id.; see also Transamerica Ins. Co. v. Standard Oil Co. (Indiana), 325 N.W.2d 210, 213 (N.D. 1982) (citing Hickman and stating, "[w]e will not apply State law in contravention of the Federal statute"). In applying TILA, the court will not prohibit the creditor and servicer from being separate entities.

The record does not demonstrate defendant ever owned plaintiff's $340,800 note, so defendant cannot be liable under TILA. See 15 U.S.C. § 1641(f). Defendant is entitled to summary judgment. See Che, 847 F. Supp. 2d at 1209-11 (granting summary judgment for a servicer on similar facts).

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's motion for summary judgment (Docket 37) is granted.

IT IS FURTHER ORDERED that plaintiff's amended complaint (Docket 20) is dismissed with prejudice.

Dated September 12, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE